19-MJ-5348-JGD

# AFFIDAVIT OF WILLIAM R. McDERMOTT

I, Special Agent William R, McDermott, depose and state as follows:

## INTRODUCTION

1.      I am a Special Agent with the Federal Bureau of Investigation ("FBI"), and have been since 2003. For much of that time, I have been engaged in gang and drug investigations. I am currently assigned to the FBI, Boston Office. In this role I work with numerous agents and law enforcement officers in investigating drug distribution and trafficking throughout the United States. In the course of participating in investigations of drug trafficking, I have conducted or participated in surveillance; the purchase of illegal drugs; the execution of search warrants; debriefings of subjects, witnesses, and informants; wiretaps; and reviews of consensually recorded conversations and meetings. Through my training, education, and experience, I have become familiar with the manner in which drug traffickers conduct their illegal drug trafficking activity, which includes the use of cellular telephones to communicate with customers, associates and sources of drug supply.

2.      I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the cellular telephone assigned call number **(857) 344-2736**, with listed subscriber unknown, and believed to be used by David WOOD, (the "Target Telephone"). The service provider for the Target Telephone is T-Mobile, a wireless telephone service provider headquartered at 4 Sylvan Way, Parsippany, New Jersey 07054. The Target Telephone is further described in Attachment A, and the location information to be seized is further described in Attachment B.

3. Based on the facts set forth in this affidavit, there is probable cause to believe that David A. WOOD, date of birth XX/XX/1989, and others have violated 21 U.S.C. §§ 841(a)(1) and 846 by knowingly or intentionally manufacturing, distributing, or dispensing, or possessing with intent to manufacture, distribute, or dispense, a controlled substance, specifically fentanyl, and by conspiring to do the same. There is probable cause to believe that the location information described in Attachment B will constitute evidence of these crimes and will lead to the identification and location of those who committed them. The location information described in Attachment B will also assist law enforcement in arresting WOOD, who is a "person to be arrested" within the meaning of Federal Rule of Criminal Procedure 41(c)(4), at the appropriate time.

4. The information contained in this affidavit is based on my own investigation, oral and written reports by other law enforcement officers, physical surveillance, information from confidential informants/cooperating witnesses, controlled buys of controlled substances, public records, database checks, and other investigations. Any dates and times in this affidavit are approximate. This affidavit is intended only to demonstrate that there is probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## PROBABLE CAUSE

5. The United States, including the Federal Bureau of Investigation, is conducting a criminal investigation of David A. WOOD, date of birth: XX/XX/1989, regarding possible violations of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 846.

6.      Since November 2019, members of the FBI and the Boston Police Department ("BPD") have been investigating drug trafficking by WOOD in the Boston area of MA. WOOD has been identified by BPD as a member of the Morse Street Gang.

7.      According to the BPD, the Morse Street Gang is one of the largest gangs in the city with nearly 20 individuals believed to be actively associated with it. For many years, the Morse Street Gang has been involved in an ongoing dispute with a group from the area of Lucerne Street in Boston (as well as several other more sporadic disputes with other area groups) that has been one of the most active disputes in the city.

## INFORMATION FROM CONFIDENTIAL SOURCES

8.      Over the course of the investigation, Special Agents of the FBI and Detectives of the BPD have received information from a Cooperating Witness ("CW-1") concerning the illegal drug trafficking of WOOD.

9.      CW-1 has provided information about WOOD to include his methods of distribution, telephone numbers used to facilitate distribution, and locations used to facilitate drug trafficking activity. CW-1 continues to provide information about WOOD, his co-conspirators, and his drug trafficking activities.

10.     CW-1 began cooperating with law enforcement in January 2018. CW-1 has positively identified numerous individuals involved in drug trafficking, illegal firearm possession, and gang activity. CW-1 has conducted numerous consensually recorded conversations in person and over the telephone. CW-1 has made numerous drug purchases from and recordings from target subjects in other investigations, in addition to the ones from WOOD described below. CW-1 has a criminal history including arrests for counterfeit, larceny, uttering, resisting arrest, disorderly

conduct, assault, controlled substance, breaking and entering, and murder,[1] though he has had no arrests since 2013. The information that CW-1 provided has been corroborated by the video of the controlled drug purchases, the recovery of the controlled substances, and by the investigation generally. I consider the information provided by CW-1 to be reliable. CW-1 has received consideration in the form of financial assistance in connection with his/her cooperation.

### Identification of the Target

11. David A. WOOD, also known as ("a/k/a") "Junito", a/k/a Neeto, a/k/a "Nito", date of birth XX/XX/1989, is a thirty-year-old male. WOOD lists a mailing address with the Massachusetts ("MA") Registry of Motor Vehicles of 7 Woodside Avenue, Apartment 3, Boston, MA.

12. A check of the MA Board of Probation and Interstate Identification Index indicates WOOD has federal convictions for possession of a firearm (2010) and state convictions for larceny from a person (2008), assault and battery (2008), threatening (2008), operating recklessly (2007), trespassing (2007) and attempt to commit crime (2007). According to the BPD, WOOD is a member of the Morse Street Gang.

### The Target Telephone

13. The Target Telephone, assigned telephone number (857) 344-2736 (the "Target Telephone Number"), is a telephone serviced by T-Mobile that does not have a named subscriber. The Target Telephone became active on November 12, 2019 and remains active. I believe, based on my training and experience, an analysis of the telephone data for the Target Telephone, and my involvement in this investigation, that WOOD uses the Target Telephone for drug-related

---

[1] This was a 1993 out-of-state arrest that did not result in a conviction.

conversations. I believe that WOOD is likely to maintain the Target Telephone and will likely possess the Target Telephone on or near his person throughout the day. The location of the Target Telephone will aid investigators in identifying WOOD's co-conspirators, stash houses, drug suppliers, and money laundering activity.

### Controlled Purchases Involving the Target Telephone

14. In November and December 2019, CW-1 conducted controlled purchases of narcotics from WOOD. CW-1 had contact with WOOD outside the presence of the investigative team to ask WOOD for drugs. SA McDermott confirmed CW-1's contact with the Target Telephone, by reviewing the call and text logs of CW-1's Phone.

**Controlled Purchase #1:**

15. On a predetermined date in November 2019[2], CW-1 met with SA McDermott and Task Force Officer (TFO) Stanton at a prearranged meeting place. CW-1 was searched by SA McDermott and was found to be free of contraband. CW-1 was provided audio/video recording devices, including a device that would transmit to SA McDermott for CW-1's safety. CW-1 was provided with $100 in Official Agency Funds (OAF). CW-1 placed a recorded phone call to WOOD at the Target Telephone. SA McDermott recorded the call and observed CW-1 place the call. After the phone call was placed to the Target Telephone, CW-1 sent a text message to WOOD on the Target Telephone asking for a clarification of the meet location. SA McDermott photographed the text exchange between CW-1 and WOOD. WOOD's Target Telephone number is stored in CW-1's phone as "Ditteo."

16. CW-1 traveled to the meeting location in Boston provided by WOOD under the

---

2 Exact dates and locations of meetings between CW-1 and Wood are withheld to protect CW-1's anonymity.

observation of the surveillance team. SA McDermott observed a red 2001 Volkswagen Passat bearing Massachusetts registration 4BE982 (the "red Passat"), which agents had on previous occasions observed WOOD operating, parked unoccupied in the vicinity. WOOD had also been identified driving this vehicle on at least one other occasion by the Boston Police in October 2019.

17. After some time, via the transmitter, SA McDermott overheard CW-1 say that he was about to meet with WOOD. Thereafter, SA McDermott and TFO Stanton observed WOOD enter CW-1's vehicle and heard CW-1 meeting with WOOD. Thereafter, SA McDermott observed WOOD exit CW-1's vehicle and walk away from CW-1.

18. CW-1 was followed by SA McDermott and TFO Stanton back to a predetermined location. CW-1 produced two small "twists" of suspected narcotics, consistent in appearance with heroin. A twist is a common method of selling narcotics. The narcotics are put into the corner of a plastic sandwich bag, the bag is twisted and knotted, and the remainder of the bag is discarded. After agents retrieved the suspected heroin from CW-1, CW-1 was again searched by SA McDermott and was found to be free of contraband.

19. CW-1 said that he/she was met by WOOD at the agreed upon location. CW-1 described WOOD as wearing a colorful camouflage sweatshirt. CW-1 texted WOOD when he/she parked CW-1's vehicle to let WOOD know he/she was ready to meet.

20. SA Leah Ferrara, who has no knowledge of WOOD and is not assigned to this investigation administered a "blind" photo array to CW-1. CW-1 identified WOOD as the individual CW-1 had met who sold CW-1 heroin.

21. A field test of the suspected heroin was inconclusive, which is not unusual for suspected heroin in my experience. An advanced field test was later conducted on the suspected

6

heroin, and it tested positive for fentanyl. The fentanyl will be sent to the Drug Enforcement Administration, North East Laboratory for additional testing.

22. I have reviewed the audio/video recording from Controlled Purchase #1. Below are two still photographs taken from that recording.



WOOD in CW-1 car with "colorful camouflage"



Plastic bags containing suspected fentanyl in WOOD's right hand.

**Controlled Purchase #2:**

23. On a second predetermined date, in December 2019, CW-1 met with SA McDermott, SA Kenny and TFO Stanton at a prearranged meeting place. CW-1 was searched by

7

SA Kenny and TFO Stanton and was found to be free of contraband. CW-1 was provided an audio/video recording device and device that would transmit to SA McDermott for CW-1's safety. CW-1 was provided with $400 in OAF.

24.     CW-1 made a recorded call to WOOD at the Target Telephone number to arrange the purchase. CW-1 was directed to go to the location in Boston that CW-1 and WOOD had met on a prior occasion to exchange money for drugs.

25.     CW-1 traveled under observation of SA McDermott, SA Kenny and TFO Stanton. When CW-1 arrived at the location he/she was overheard speaking to WOOD. WOOD directed CW-1 to another location. Surveillance units were able to observe the red Passat operated by WOOD parked in the vicinity of the location to which WOOD directed CW-1.

26.     SA McDermott observed WOOD entering CW-1's vehicle. WOOD directed CW-1 to drive around the block. SA McDermott and SA Kenny were able to observe WOOD provide suspected heroin/fentanyl to CW-1. Video also demonstrates WOOD accepting OAF from CW-1 in exchange for the suspected heroin/fentanyl. SA McDermott and SA Kenny observed WOOD speaking to an unknown individual on a cellular phone. During the conversation WOOD asked the unknown caller, "Whatchu wanted?" and then WOOD says, "One and one." "One and one" is a common term used by drug dealers and customers for one amount of heroin and another amount of cocaine or crack.

27.     The suspected heroin/fentanyl weighed 7.6 grams, and an advanced field test was positive for fentanyl. The fentanyl will be sent to the Drug Enforcement Administration, North East Laboratory for additional testing.

28. I have reviewed the audio/video recording from Controlled Purchase #2. Below are two still photographs taken from that recording.



WOOD in distinctive sweatshirt holding "twists."



WOOD accepting OAF for the "twists" of a substance later testing positive for fentanyl.

28. I have reviewed the audio/video recording from Controlled Purchase #2. Below are two still photographs taken from that recording.



WOOD in distinctive sweatshirt holding "twists."



WOOD accepting OAF for the "twists" of a substance later testing positive for fentanyl.

## Conclusion

29.     Based on the above, I believe that WOOD has used and will continue to use the Target Telephone to communicate with co-conspirators in furtherance of the Target Offenses. I believe that the precise location information requested by the proposed warrant will enable investigating agents to determine where WOOD conducts his drug distribution business, with whom he meets, where he meets, where he stores additional quantities of controlled substance and/or drug proceeds, and may assist in determining the identity of additional co-conspirators. Specifically, the precise location information will enable investigators to determine the approximate locations that WOOD frequents so that law enforcement agents can conduct physical surveillance of them meeting with unidentified associates engaging in criminal activity such as the distribution of controlled substances. Therefore, the location of the Target Telephone is likely to yield evidence and information related to WOOD's illegal drug distribution activities.

30.     One purpose of applying for the warrant is to determine with precision the Target Telephone's location. However, there is reason to believe the Target Telephone is currently located somewhere within this district because its owner WOOD is known to spend most of his time in this district; the area code corresponds to this district; and physical surveillance has observed WOOD in this district within the past seven days. Pursuant to Rule 41(b)(2), law enforcement may locate the Target Telephone outside the district provided the Target Telephone is within the district when the warrant is issued.

## The Relevant Technology

31.     I know that mobile phone providers have technical capabilities that allow them to collect and generate at least two kinds of information about the locations of the mobile phones to

which they provide service: (1) E-911 Phase II data, also known as GPS data or latitude-longitude data, and (2) cell-site data, also known as "tower/face information" or cell tower/sector records. E-911 Phase II data provides relatively precise location information about the mobile phone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the mobile telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise than E-911 Phase II data.

## Authorization Request

32.     I request that the Court issue the proposed search warrant, pursuant to 18 U.S.C. § 2703(c) and Fed. R. Crim. P. 41.[3]

33.     I also request that the Court direct T-Mobile ("the Service Provider") to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with the Service Provider's services, including by initiating a signal to determine the location of the Target Telephone on the Service Provider's network, and at such intervals and times as directed by the government. The government will compensate the Service Provider for

---

[3] 18 U.S.C. § 2703(c) authorizes a "court of competent jurisdiction" to issue a search warrant for the kinds of records that this application seeks. A "court of competent jurisdiction" includes a district court ("including a magistrate judge") that has jurisdiction over the offense being investigated. 18 U.S.C. § 2711(3)(A)(i).

11

reasonable expenses incurred in furnishing such facilities or assistance.

34.     I further request that, pursuant to the preclusion of notice provisions of 18 U.S.C. §§ 2703(b)(1)(A) & 2705(b), the Court order the Service Provider not to notify any person (including the subscribers or customers to whom the materials relate) of the existence of this application, the warrant, or the execution of the warrant, for the earlier of one year from the date of the Court's Order or upon notice by the government within 30 days of the conclusion of its investigation, unless the Court extends such period under 18 U.S.C. § 2705(b), the Service Provider may disclose this Order to an attorney for the Service Provider for the purpose of receiving legal advice.  Non-disclosure is appropriate in this case because the Court's Order relates to an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation, and its disclosure may alert the targets to the existence of the investigation.  There is accordingly reason to believe that notification of the existence of the Order will seriously jeopardize the investigation, including by:  giving targets an opportunity to flee from prosecution, destroy or tamper with evidence, change patterns of behavior, intimidate potential witnesses, or endanger the life or physical safety of an individual.  See 18 U.S.C. § 2705(b).

35.     I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay any required notice until 30 days after the collection authorized by the warrant has been completed.  There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705.  Providing immediate notice to the subscriber or user of the Target Telephone would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior,

notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

36. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the Target Telephone outside of daytime hours.

37.     I further request that the Court order that all papers in support of this application, including the affidavit and search warrants, be sealed until further order of the Court, except that the government may produce them in criminal discovery and provide the search warrant to the Service Provider. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

_____
William R. McDermott
Special Agent
Federal Bureau of Investigation

Sworn before me this 6th day of December 2019.

_____
HONORABLE JUDITH G. DEIN
U.S. MAGISTRATE JUDGE